**PERFORMANCE CHEVROLET INC., Plaintiff—Appellee,**

v.

**MARKET SCAN INFORMATION SYSTEMS INC., Defendant—Appellant.**

No. 07–35328.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 20, 2008.

Filed Oct. 29, 2008.

James Walter Sinclair, Nicole C. Hancock, Stoel Rives, LLP, Boise, ID, for Plaintiff–Appellee.

Kevin C. Braley, Esquire, Holland & Hart, LLP, Boise, ID, Jeffrey A. Yeager, Esquire, Hahn Loeser & Parks LLP, Columbus, OH, for Defendant–Appellant.

Before: SILVERMAN, McKEOWN, and BERZON, Circuit Judges.

### MEMORANDUM *

In this breach of contract action, Defendant–Appellant Market Scan Information Systems, Inc. ("Market Scan"), a Califor-

nia-based computer software company, seeks reversal of the district court's denial of its Motion for Judgment as a Matter of Law or for New Trial. Market Scan also appeals the district court's award of attorneys' fees to the Plaintiff–Appellee Performance Chevrolet, Inc. ("Performance"), an Idaho-based automobile dealer. We affirm the district court in all respects.

### 1. Statute of Limitations

Cal. Comm.Code section 10506 provides for a four-year limitations period on breaches of lease agreements which accrues "when the act or omission on which the default or breach of warranty is based is or should have been discovered by the aggrieved party, or when the default occurs, whichever is later." Under California law, discovery occurs "only after the damage is sufficiently appreciable to give a reasonable man notice that he has a duty to pursue his remedies." *See Mills v. Forestex Co.,* 108 Cal.App.4th 625, 646, 134 Cal.Rptr.2d 273 (2003).

■ In this case, although Performance had problems with the Lease Prophet product from the beginning of the contract period, its injury was not "sufficiently appreciable" under the applicable standard until it became apparent that Market Scan's suggestions for improving the performance of its product did not work, and that the company was incapable of repairing the product. The evidence indicates that this realization reasonably did not occur until at least April 15, 2000, the relevant cut-off date.

### 2. Sufficiency of the Evidence

■ Performance supplied extensive evidence that Market Scan, rather than user

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

error, faulty phone lines, or a poor internet service provider ("ISP"), was the legal cause of the updating issues, and hence of Performance's failure to receive the benefits of the contract payments. This evidence included: (1) testimony from Performance employees that the updating problems persisted even after the company switched ISPs and phone lines; (2) testimony from Performance's owner that the updating process failed even when the company attempted manually to update the system during the day; (3) testimony from employees of two nonparty autodealers who stated that they had similar problems with the Lease Prophet product, despite using different connectivity technologies than Performance; and (4) testimony from Market Scan's founder, Russell West, that the programs that performed the automatic update were written and maintained exclusively by Market Scan. Market Scan's sufficiency of the evidence argument is thus without merit.

### 3. Testimony of Nonparty Auto-dealers

We review a district court's evidentiary rulings and its decision to impose sanctions under Rule 37 for abuse of discretion. *See Tritchler v. County of Lake*, 358 F.3d 1150, 1155 (9th Cir.2004); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105–6 (9th Cir.2001).

■ The district court admitted Hannah's and Hanigan's testimony pursuant to Fed.R.Evid. 404(b) and 403 after properly evaluating the tightness of the fit between the nonparty dealers' experience with Lease Prophet and Performance's experience. *See First Sec. Bank v. Union Pac. R. Co.*, 152 F.3d 877, 879–80 (8th Cir.1998). With respect to Hannah's testimony, the district court was careful to ensure that Hannah testified only to matters that she experienced personally and sustained a number of Market Scan's hearsay objec-

tions to particular testimony. Finally, the district court weighed the prejudice to both parties and considered the surrounding circumstances before deciding to allow Hanigan to testify with a limiting instruction. The district court's careful consideration of each of these issues indicates that it did not abuse its discretion.

■ During its instruction to the jury prior to Hanigan's testimony, the district court stated that Performance had "other witnesses on the same general subject matter that could have testified" instead of Hanigan. Although this statement was improper and could have been prejudicial, the error was harmless for three reasons: first, the judge did not say what the other witnesses would have said, just what the subject of their testimony would have been; second, the jury is likely to have drawn the inference that there were other dealers who had difficulties with the system even absent the court's statement, as one such dealer testified and Market Scan did not refute that testimony with evidence from a satisfied dealer; and, third, Performance provided a great deal of evidence that Market Scan was responsible for the updating issues, including testimony from the other dissatisfied dealer. The district court's isolated statement was therefore unlikely to have affected the jury's conclusion on the key issue in the case.

### 4. Spoliation of Evidence

■ The record establishes that Performance reformatted the Market Scan computer before it had the requisite "notice that the [computer was] potentially relevant to ... litigation" against Market Scan, *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.2002), and that Market Scan would have likewise reformatted the computer had it been returned. The district court's decision not to impose any sanction was therefore well-

supported by the evidentiary record, and not an abuse of discretion. *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.,* 982 F.2d 363, 367 (9th Cir.1992).

## 5. Decision to Admit the Goldmine Reports

■ The district court did not abuse its discretion when it concluded that the Goldmine Reports were admissible under Fed. R.Evid. 803(6). Market Scan had a regular practice of verifying the information provided by customers, so the applicable 803(6) standard was met. *See United States v. Bland,* 961 F.2d 123, 127 (9th Cir.1992).

## 6. Jury Instructions

■ The court's Instruction 8 explained the issues presented and correctly placed the burden on Performance to show (1) that Market Scan had a contractual obligation to provide daily access and updates to the Lease Prophet System; (2) that Market Scan failed to perform this obligation; (3) that its failure caused damages to Performance; and (4) the amount of those damages. In Instruction 9, the district court also rightly placed the burden on Market Scan to prove the affirmative defense that its performance was excused by Performance's failure to meet its contractual obligations. As a result, the instructions "fairly and correctly cover[ed] the substance of the applicable law" and the issues presented. *See White v. Ford Motor Co.,* 312 F.3d 998, 1012 (9th Cir. 2002).

## 7. Attorneys' Fees

■ Under either Idaho or California law, the district court did not abuse its discretion when it found that Performance was a "prevailing party" in the litigation. *See Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc.,* 141 Idaho 716, 719, 117 P.3d 130 (2005); *Hsu v. Abbara,* 9 Cal.4th 863, 876, 39 Cal.Rptr.2d 824, 891

P.2d 804 (Cal.1995). The court evaluated each of Performance's causes of action and found that the company had successfully achieved its primary objective: return of its lease payments. It therefore acted within its authority when it awarded Performance "prevailing party" status.

**AFFIRMED.**