Filed 6/29/15  Yee v. Richance HB CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARIA L. YEE, as Trustee, etc.,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>        v.<br><br>RICHANCE HB, LLC,<br><br>    Defendant, Cross-complainant and Respondent. | G049598<br><br>(Super. Ct. No. 30-2011-00453370)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, William M. Monroe, Judge.  Affirmed.

Pardes & Stein; Law Offices of Fred S. Pardes and Fred S. Pardes for Plaintiff, Cross-defendant and Appellant.

Wolfe & Wyman and Eric T. Lamhofer for Defendant, Cross-complainant and Respondent.

\*          \*          \*

In a real property dispute, plaintiff, cross-defendant and appellant Maria Yee (Yee) challenges a postjudgment order finding that neither she nor defendant, cross-complainant and respondent Richance HB, LLC (Richance) was the prevailing party for the purposes of attorney fees. The court did not abuse its discretion in declining to award attorney fees to either party. We affirm.

I

FACTS

A. *Background:*

In 1979, Don Jose Restaurants, Inc. and Fountain Plaza Investments, the owners of neighboring commercial properties, entered into an easement agreement (Easement Agreement). The parties agreed that certain portions of their respective properties would be set aside for parking and that they would exchange reciprocal easements for that purpose. An exhibit was attached to the Easement Agreement, showing the designated parking areas. It also showed the locations of existing buildings on the Fountain Plaza Investments property and the site of a planned restaurant to be built by Don Jose Restaurants, Inc. on its property. The parties expressed an intention that the Easement Agreement bind their successors and assigns.

The property owned by Don Jose Restaurants, Inc. was later acquired by Kue Sung Lin and certain others (the Lins) and the property owned by Fountain Plaza Investments was acquired by Yee. The Lins sued Yee over the Easement Agreement (*Lin v. Yee* (Super. Ct. Orange County, 2003, No. 02CC03382)) (the *Lin Action*). In June 2003, the Lins and Yee entered into a stipulated judgment (the 2003 Stipulated Judgment). They agreed that the Easement Agreement created "a parking easement and not a use restriction easement and the previous proposed use of a restaurant by [Don Jose Restaurants, Inc. had] been abandoned." They further agreed that they each "retain[ed] the right for reciprocal parking easements subject to approval for potential use of [the Lins'] interest by the City of Huntington Beach only."

2

*B. Current Lawsuit:*

The property once owned by Don Jose Restaurants, Inc. was eventually acquired by Richance (the Richance Property). In January 2011, Richance leased its property to Garcia Juarez Construction (Garcia Juarez) for short-term use as a construction equipment staging area in connection with an off-site construction project for the City of Huntington Beach (City).

In February 2011, Yee filed a lawsuit against the City, Garcia Juarez, Richance, and others, for inverse condemnation, among other things. She alleged, inter alia, that she owned certain commercial real property (the Yee Property), adjacent to the Richance Property. She further alleged that she was the successor-in-interest to Fountain Plaza Investments under the Easement Agreement and that Richance was the successor-in-interest to Don Jose Restaurants, Inc. Yee asserted that the easement created thereunder burdened the Richance Property in favor of the Yee Property. In addition, Yee claimed the leasing of the Richance Property and the use of it as a staging area violated both the Easement Agreement and her property rights thereunder.

In May 2011, Richance filed a cross-complaint against Yee for quiet title, intentional interference with contract, unfair business practices, trespass, and declaratory relief. Richance alleged that the Easement Agreement purported to create reciprocal parking easements over the two properties, but that Yee had never attempted to use the easement across the Richance Property. It further claimed that Yee had interfered with Richance's prior attempts to either lease or sell its property. Richance later dismissed its causes of action for intentional interference with contract, unfair business practices and trespass.

Yee filed a first amended complaint. She alleged therein that, in 2007, Richance entered into a reciprocal maintenance easement agreement with Robert Clayton and others (the Claytons), pertaining to property owned by the Claytons (the Clayton Property) adjacent to, and to the south of, the Richance Property (the Richance/Clayton

3

Agreement). Yee claimed that the Richance/Clayton Agreement permitted the parties to enter each other's land and had the effect of imposing new or increased burdens on Yee's rights under the Easement Agreement. She also alleged that, in 2007, Richance had made an irrevocable offer to grant a reciprocal easement over the Richance Property in exchange for easements across the Clayton Property and yet another property, owned by the Johnson Family Trust or certain others (the Johnson Property) (the 2007 Irrevocable Offer). She claimed the purpose of the 2007 Irrevocable Offer was to provide ingress and egress to and from certain streets. Again, Yee claimed the 2007 Irrevocable Offer imposed new or increased burdens on her rights under the Easement Agreement.

Richance filed a first amended cross-complaint against Yee for quiet title, based on estoppel and adverse possession, and for declaratory relief. Richance again alleged that Yee had never attempted to use the easement area over the Richance Property. It also asserted that it had adversely possessed the parking easement area over the Richance Property since about 2004, when it acquired the property. Through its quiet title causes of action, Richance sought to extinguish any claim of Yee to the easement area over the Richance Property. It also sought declaratory relief in the form of a determination that Yee had no right to control the manner in which it used its property and that the Easement Agreement had been terminated.

Richance filed a motion for summary adjudication of certain issues raised in Yee's first amended complaint. The court granted the motion in part and denied it in part.

The parties stipulated for entry of judgment. The stipulated judgment, filed September 3, 2013 (the 2013 Stipulated Judgment), provided the Easement Agreement was enforceable by both Yee and Richance and was subject to the 2003 Stipulated Judgment, which had been recorded. It further provided that the easement included reciprocal parking rights, reciprocal rights of ingress and egress, and "a covenant regarding general siting of permanent structures and open space (the 'Siting Covenant')."

4

The 2013 Stipulated Judgment provided that future development would comply with the Siting Covenant.

The 2013 Stipulated Judgment further provided that Yee's request for declaratory relief to have the Richance/Clayton Agreement declared void was denied without prejudice to her bringing a future action if she could show that it unduly burdened her use of the Yee Property or the easement. It also provided that Yee's request for declaratory relief to have the 2007 Irrevocable Offer declared void was denied without prejudice to her bringing a future action if she could show that the it either compelled a substantial deviation from the Siting Covenant or unduly burdened her use of the Yee Property or the easement.

Richance prevailed on Yee's causes of action against it for breach of written easement and trespass. However, Yee prevailed against Richance on its cross-complaint.

The 2013 Stipulated Judgment provided that the issue of the determination of the prevailing party under Civil Code section 1717, for the purpose of attorney fees, would be determined by separate motions. Yee filed an attorney fee motion seeking $610,289 and a memorandum of costs for $11,361.67. Richance filed an attorney fee motion seeking $131,695.43 and a memorandum of costs for $10,718.88.

In its minute order, the court observed: "Plaintiff Yee claims she was the prevailing party because she obtained a judgment that validated her easement rights. Defendant Richance claims that it was the prevailing party because it prevailed on the breach of easement agreement, which vindicated its right to lease its property – its main litigation objective. . . . [¶] . . . Neither party received the declaratory relief each sought. Both sides tout their victories and downplay their defeats." It denied attorney fees to either party, stating: "Because the result of this litigation was essentially a wash, the Court will exercise its discretion." Yee appeals.

5

II

DISCUSSION

*A. Civil Code Section 1717:*

The Easement Agreement contained a provision for the award of attorney fees to the successful party in a lawsuit based thereon.

Civil Code section 1717, subdivision (a) provides that in any action on a contract providing for the award of attorney fees to the prevailing party, that party shall be entitled to reasonable attorney fees. Civil Code section 1717, subdivision (b)(1) provides that the court shall determine the prevailing party. It further provides that "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract."

"A trial court has broad discretion in determining which party has obtained greater relief on the contract, and we will not disturb such a determination on appeal absent a clear abuse of discretion. [Citation.] ""Discretion is abused when a court exceeds the bounds of reason or contravenes uncontradicted evidence."" [Citation.] We are required to uphold a reasonable ruling even if we might not have ruled the same way and a contrary ruling would also be sustainable. [Citations.]" (*In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 578.)

"[I]n deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' [Citation.]" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876.)

6

"*[I]n determining litigation success*, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.'  For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party it if is clear that the party has otherwise achieved its main litigation objective.  [Citations.]  But when one party obtains a 'simple, unqualified win' on the single contract claim presented by the action, the trial court may not invoke equitable considerations unrelated to litigation success, such as the parties' behavior during settlement negotiations or discovery proceedings, except as expressly authorized by statute.  [Citations.]"  (*Hsu v. Abbara*, *supra*, 9 Cal.4th at p. 877.)

Here, neither party obtained a "'simple, unqualified win.'"  (*Hsu v. Abbara*, *supra*, 9 Cal.4th at p. 877.)  However, Yee maintains that she obtained both her main litigation objective and the greater relief.  We shall see.


*B.  Greater Relief:*

In the matter before us, Yee contends the "Court abused its discretion in failing to properly analyze which party 'recovered the greater relief.'"  Yee claims she recovered the greater relief and the court erred in ignoring her attorney's argument that she had the greater net recovery.  She contends her easement over the Richance Property, which was preserved, was worth about $1 million and the damages for breach, which she did not recover, were worth only about $42,000.  So, as she views it, she "won" about $1 million and "lost" about $42,000.  Or, she prevailed on a $1 million claim against Richance and Richance successfully defended itself against a claim of only $42,000 in damages.

In support of her contention about the easement valuation, Yee cites the declaration of her appraiser, William Hansen, filed concurrently with her motion for attorney fees.  Hansen opined that the Richance Property was worth about $50 per square foot, or $2,210,000, with the easement restrictions and about $75 per square foot, or

7

$3,315,000, without them. He concluded that the Richance Property would be worth about $1,105,000 more without the easement restrictions than with them. Hansen viewed this as the amount Richance would likely pay Yee for a relinquishment of the easement restrictions, and thus construed the easement over the Richance Property as being a $1,105,000 asset belonging to Yee.

Even if we were to assume that Richance would pay to terminate the easement across its property and that, therefore, it is proper to construe the easement across the Richance Property as an asset Yee could sell to Richance for $1,105,000, Yee overlooks the fact that the judgment concomitantly preserved an easement across the Yee Property in favor of Richance. This is so even though Yee had blocked off the passage between the two properties with concrete wheel stops. She fails to consider the burden to her of the right preserved in Richance for its future invitees to make use of the Yee Property for parking purposes and she makes no mention of the value to Richance of its easement over the Yee Property. Thus, even dropping the damages claim out of the picture, we do not agree that Yee scored a $1 million "win" over Richance.

However, Richance successfully defended itself against a damages claim by Yee. Attorney Jack Snyder, on behalf of Richance, declared that the lowest settlement demand from Yee's counsel was $125,000. However, after the stipulated judgment was entered, Yee's attorney, Michael Leifer, described her damages as being about $42,000. Whether described as a $125,000 claim for breach of the easement or as a $42,000 claim, the stipulated judgment granted judgment in favor of Richance on that cause of action. So, Richance scored a "win" on that claim.

In short, Yee prevailed on her claim the Easement Agreement was enforceable, so the Richance Property remained burdened with a parking easement, but so did the Yee Property. And, Richance prevailed on Yee's claim that it owed her damages, so Richance paid nothing and Yee received nothing. As the trial court put it, "the result of this litigation was essentially a wash . . . ."

8

*C. Main Litigation Objective:*

*(1) Pleadings as evidence of objective—*

Yee also claims she is the prevailing party because she prevailed on her main litigation objective, whereas Richance lost on its main litigation objective. She characterizes her main litigation objective as easement preservation and Richance's main litigation objective as termination of the Easement Agreement. She says she prevailed in either case.

In her first amended complaint, Yee's first contract-related cause of action was for breach of the Easement Agreement. She asserted Richance had breached its contract by interfering with her easement, thereby causing her damage. Yee's second contract-related cause of action was for quiet title. She claimed all defendants, including Richance, claimed adverse interests in her easement over the Richance Property. Yee's third contract-related cause of action was for declaratory relief. She sought a declaration that she continued to own an easement across the Richance Property and that the various defendants were prohibited from using the Richance Property for uses that conflicted with the Easement Agreement.

In its first amended cross-complaint, Richance asserted that the Easement Agreement was "only a parking easement and [did] not restrict the use" Richance could make of its own property. It further asserted that, under the terms of the Easement Agreement, Yee had no rights with respect to the Richance Property before it was developed. Richance alleged that at no time in the preceding 20 years had Yee "used or attempted to park cars on" the Richance Property. It further alleged Yee had "erected 'parking wheel stops' on the boundary between the two properties which . . . [made] it physically impossible for cars to access" the Richance Property from the Yee Property.

Richance sought declaratory relief to the effect that: (1) Yee had no "right to control what use" Richance made of its property; (2) Yee had no right to use the Richance Property before it was developed; and (3) the Easement Agreement had been

9

terminated. Richance also requested that the court quiet title to the Richance Property, based on estoppel and/or adverse possession, such that Yee would have no continuing right to claim an easement interest in it. Of course, Richance also sought to defend itself against Yee's claim for damages for breach of easement.

*(2) Additional evidence of objective—*

*(a) Richance's main litigation objective*

In addressing the parties' main litigation objectives, Yee starts off by claiming "Richance belatedly recanted its main litigation objective" and "wrongfully attempts to conceal its main litigation objective." In support of these assertions, she cites the first amended complaint the Lins filed against Yee in the *Lin Action* and the 2003 Stipulated Judgment filed in that case. These record references do not support her characterization of the actions of Richance.

*(b) Yee's main litigation objective*

As additional evidence of her main litigation objective, Yee cites several letters. The first is a letter dated December 13, 2011 from her counsel, Attorney Leifer, to counsel for Garcia Juarez. That letter, as Yee concedes, was written after the short-term Garcia Juarez lease had ended and Garcia Juarez had vacated the premises. Yee offered to settle the litigation with Garcia Juarez for $40,000. Nothing in that letter provides an indication that Yee's main litigation objective was to preserve her parking easement across the Richance Property.

In addressing whether she met her main litigation objective, Yee also mentions that she recovered $20,000 in settling with the City and Garcia Juarez. She says the "recovery is for the same measure of damages potentially recoverable under the breach of Easement claim." In support of that assertion, Yee cites the declaration of Attorney Leifer. He represented that the settlement monies were paid in exchange for Yee's dismissal of her causes of action for nuisance, trespass and inverse condemnation. He explained that Yee had been unable to rent out certain tenant space while Garcia

10

Juarez was using the Richance Property and that she had increased cleaning costs due to dust and dirt from construction activities.

However, these damages were not caused by the inability of Yee's customers to park their cars on the Richance Property. Indeed, Yee conceded that the use of the Richance Property for parking purposes, before that property was developed, was unnecessary. Not only that, but as the trial court observed, Yee "herself appear[ed] to have violated the Easement by permitting concrete wheel stops to exist along the entirety of the common boundary line between the respective properties." The court further observed that photographs plainly showed the wheel stops impeding vehicular movement.

Moreover, as the trial court noted, "it is important to draw a careful distinction between the nuisance cause of action (wherein activities on the servient parcel caused dust, smoke and noise to migrate onto [Yee's] property) and the breach-of-Easement claim (wherein plaintiff must show unreasonable interference with *use* of the Easement plus entitlement to relief from diminished value of her own property or loss of the benefit intended by the Easement)."[1] In short, Yee's recovery of $20,000 in settlement with the City and Garcia Juarez on her causes of action for nuisance, trespass and inverse condemnation is not evidence of her having achieved her main litigation objective with respect to the contract claims on which she bases a claim of prevailing party status. (*Hsu v. Abbara*, *supra*, 9 Cal.4th at p. 876 [prevailing party determination based on contract claims].)

---

[1] As an aside, the court questioned Yee's ability to prove she had been unable to lease her tenant space because of the activities of Garcia Juarez on the Richance Property, as opposed to "the economy, poor management, supply/demand, time of year, location building appearance, signage, or a host of other factors." It further observed Yee had not shown "that enthusiasm peaked and vacancies filled once Garcia [Juarez] packed up and left."

Yee also cites an exchange of letters among counsel in February 2012. Attorney Leifer, on behalf of Yee, wrote to Attorney Eric Lamhofer, on behalf of Richance. Attorney Leifer expressed concern that the Richance/Clayton Agreement and the 2007 Irrevocable Offer could be construed as diminishing Yee's parking easement across the Richance Property.

Attorney Lamhofer replied that it was inconceivable how either the Richance/Clayton Agreement or the 2007 Irrevocable Offer could be so construed. He further asserted that, from the date Richance purchased its property in 2004, Yee "[had] made every possible effort to frustrate and thwart Richance's right to use, develop or sell" its property. Attorney Lamhofer quoted the 2003 Stipulated Judgment wherein the Easement Agreement was declared to be "a parking easement and *not a use restriction easement . . . .*" (Italics added.) He stated Richance was willing to negotiate with Yee to resolve disputed issues, but that it would not agree to give Yee the right to exercise "veto power" over the *use* to which Richance put its property.

Indeed, Yee herself cites the portion of her complaint wherein she alleged the Easement Agreement provided reciprocal parking easements and "addresse[d] certain land controls . . . ." She maintained her position about "land controls" even though the 2003 Stipulated Judgment provided that the contemplated use of the Richance Property for a restaurant had been abandoned.

While Yee nonetheless insists her main litigation objective was to preserve the Easement Agreement, Richance argues the evidence belies her assertion. It claims her main objective was to restrict the use to which the Richance Property could be put. In support of this position, Richance cites the declaration of one of its owners, Andy Hsu, the declaration of one of its prospective tenants, David Cheng, and the complaint filed by the Lins in the *Lin Action*.

12

In his declaration, Hsu stated the Richance Property was an undeveloped dirt lot when he purchased it and it remained an undeveloped dirt lot. He declared that, from the time he purchased the lot in November 2004, "Yee's parcel has had along its southern border contiguous to my property a series of concrete wheel stops for parked cars, which run the entire length of Ms. Yee's asphalt parking area to the eastern border of her property and encompass the entire length of my parcel. These wheel stops effectively prevent the driving of automobiles onto my vacant dirt lot from Yee's property." Hsu further declared that, separation of the properties by Yee's wheel stops notwithstanding, Yee had repeatedly complained to him that the Easement Agreement prohibited him from leasing out his property, even to Christmas tree vendors. He also indicated that she had successfully thwarted a lease to Cheng and had filed suit after Richance leased its property to Garcia Juarez.

In his declaration, Cheng stated that he, as the owner of Accord Engineering, Inc., had been interested in leasing the Richance Property "for the temporary storage of construction materials and equipment." He met with Hsu at the Richance Property on the morning of September 18, 2007 to discuss the matter. Shortly after Hsu left, Yee came over and spoke to Cheng and his job superintendent. According to Cheng, "Mrs. Yee was confrontational and threatening to us. She stated that she would not allow my company to use Richance's property because it was within her rights and our proposed activity on the property would de-value her property. Mrs. Yee was mad, upset, and repeatedly threatened to sue us if we leased the property for our intended purpose."

Indeed, in their first amended complaint against Yee, the Lins alleged a controversy between her and them based on Yee's contention that the Easement Agreement restricted their "right to develop their property to a [restaurant] only" and their contrary contention the Easement Agreement imposed no such limitation. The Lins sought a court determination that the Easement Agreement did not restrict their right to

13

develop their property for restaurant purposes only. The 2003 Stipulated Judgment, as previously noted, decreed that the Easement Agreement "[was] a parking easement and not a use restriction easement and the previously proposed use of a [restaurant] . . . [had] been abandoned."

We must agree that, given Yee's stance towards Hsu, Cheng and the Lins, and her use of wheel stops to block the passage of vehicular traffic between her property and the Richance Property, there is ample evidence to undermine Yee's assertion that her main litigation objective was to ensure the enforceability of the Easement Agreement. Moreover, we observe Yee's first contract-related cause of action was for damages for breach of the Easement Agreement and the first evidence she cited in support of her characterization of her main litigation objective was evidence of a claim for damages.

*D. Conclusion:*

"'"[T]he trial court '"is given wide discretion in determining which party has prevailed on its cause(s) of action. Such a determination will not be disturbed on appeal absent a clear abuse of discretion."' [Citation.]" [Citation.] Furthermore, the trial court has the "power to determine that neither party prevailed. Requiring a determination for one party or the other in every case would encourage absurd results for if the court determines that neither party actually prevailed it would be unreasonable to award attorney fees." [Citations.]' [Citation.]" (*Roden v. AmerisourceBergen Corp.* (2010) 186 Cal.App.4th 620, 663.)

Yee obtained a stipulated judgment that the Easement Agreement remained enforceable, but obtained neither damages nor a right to control the use of the Richance Property. Richance obtained a stipulated judgment that it was not liable for damages, but did not obtain a declaration that the Easement Agreement was unenforceable. We cannot say the court exceeded the bounds of reason, or abused its discretion, in concluding the result was a wash. (*In re Tobacco Cases I*, *supra*, 216 Cal.App.4th at p. 578.)

14

*E. Driving Up Fees:*

In a four-page argument, Yee claims the trial court committed reversible error in failing to find that Richance drove up her litigation costs. She provides almost no record references in support of her assertion that Richance drove up costs, and the record references she does provide do not appear to furnish the requisite support. For example, she cites the 2013 Stipulation for Judgment, which she and Richance both signed, as evidence that Richance was driving up costs. She explains: "In stipulating to a judgment, [Richance] reserved its ability to continue litigating with an appeal." This is a curious position to take, inasmuch as the stipulation permitted an appeal only as to attorney fees and costs and she was the one who filed the appeal.

Yee's only citation to legal authority is contained in a solitary sentence that reads: "Other than an invalid Offer to Compromise made under California Code of Civil Procedure § 998 . . . , Richance made no monetary offer to settle this matter." To the extent Yee means to argue that Richance's omission to make more than one offer to compromise is evidence that it was driving up costs, she does not explain why this bore upon the court's prevailing party determination.

Yee has provided no legal authority to support the implied argument that because Richance drove up the costs of litigation, the court abused its discretion in determining that there was no prevailing party. Her argument is waived. (*Roden v. AmerisourceBergen Corp.*, *supra*, 186 Cal.App.4th at pp. 648-649.)

*F. Reasonableness of Fees Incurred:*

As her last argument, Yee asserts "the trial court committed prejudicial and reversible error by failing to find that Mrs. Yee should be paid her reasonable attorneys' fees." (Capitalization and underscoring omitted.) Under that topic heading, Yee provides four pages of argument as to why her fees were reasonable.

15

We do not address whether her fees were reasonable, inasmuch as we have determined that the court did not err in finding there was no prevailing party in this matter.

III

DISPOSITION

The order is affirmed.  Richance shall recover its costs on appeal.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.

16