Filed 6/26/13  Rancho Heights Road Maintenance Committee v. Taufer CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| RANCHO HEIGHTS ROAD MAINTENANCE COMMITTEE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>THOMAS J. TAUFER,<br><br>Defendant and Appellant. | D059656<br><br><br>(Super. Ct. No. 37-2008-00057101-CU-BC-NC) |

APPEAL from a judgment and an order of the Superior Court of San Diego County, Thomas P. Nugent, Judge.  Affirmed.


Thomas J. Taufer, in pro. per., for Defendant and Appellant.

Walters & Caietti, Robert M. Caietti, for Plaintiff and Respondent.


The issues in defendant's appeal are whether the trial court erred by entering a judgment that (1) his properties are subject to road maintenance assessments under an agreement entered into by property owners in an outlying area; (2) an election held on an

increase in the amount of assessments was valid, and (3) there was no prevailing party for purposes of contractual attorney fees. Defendant represents himself on appeal, and because his briefing violates basic appellate principles, we deem his contentions waived. Further, even without waiver we find no error. We affirm the judgment and the order.

FACTUAL AND PROCEDURAL BACKGROUND

This action pertains to a document recorded in January 1973, entitled "Declaration of Restrictions and Road Maintenance Agreement" (the Agreement). The Agreement was signed by the owners of properties in the Pala area of San Diego County, who use private roads to access Pala-Temecula Road, a public thoroughfare. Properties subject to the Agreement are referred to by section numbers, including Section 3. Further, the roads covered by the Agreement include roads in Section 3, such as Rancho Heights Road.[1]

Under the Agreement, a "Road and Management Committee" (the Committee) was formed, which is composed of five owners of property subject to the Agreement.[2] The Agreement required each owner to pay an annual fee of $0.50 per acre for the

---

[1]     The Agreement provides: "The lands subject to this agreement are Sections 2, 3, 11, 12 and 13 and those portions of Sections 10 and 15 lying Easterly of Pala-Temecula Road EXCEPTING those portions of Sections 3, 10 and 15 which have direct access to Pala-Temecula Road by driveway or private road and which do not have any road connections to roads within lands subject hereto, all in Township 9 South, Range 2 West, San Bernardino Base and Meridian, in the County of San Diego, State of California." The evidence indicates the Agreement covered approximately eight miles of roads, including Rancho Heights Road.

[2]     Despite the Agreement's designation of the Committee as the road and management committee, in this litigation plaintiff refers to itself as the "Rancho Heights Road Maintenance Committee."

"primary purpose of . . . repair[ing] and maintain[ing] . . . roadways within the subject lands," and the Committee had the discretion to assess each owner an additional $0.50 per acre.  The Agreement provides, "[n]o further assessments shall be levied for any purpose without the prior approval of membership exercising 65 [percent] of the voting power as herein set forth."

In 1992, Thomas Taufer and Lyse McGonigle, as tenants in common, purchased roughly 20 acres of property subject to the Agreement.[3]  After a subdivision in the early 2000's, Taufer owns four properties, three of which are located entirely within Section 3, and one of which is partially located in Section 3.  The properties are improved with two residences, including one that is situated entirely in Section 3.

In the late 1990's the Committee realized that increased maintenance assessments were needed.  At a property owners meeting in October 1998, the Committee discussed the proposal and it "was passed by acclaim."  To obtain a vote, the Committee sent property owners ballots by mail and held the election open until sufficient ballots were returned to either accept or reject the proposal.  Under the Agreement, an owner was entitled to one vote for each parcel owned, plus one vote for each 10 acres owned.

In October 2000 the Committee announced it had received yes votes representing 65 percent or more of the voting power.  In May 2001 an amendment to the Agreement (the Amendment) was recorded.  The Amendment provides, "[i]t is agreed that all owners of lands subject hereto shall pay to the Committee an annual assessment of a minimum

---

[3]    McGonigle is not involved in this appeal.

$100 to a maximum of $200 per Benefit Unit." Benefit units are based on the amount of a property's acreage and whether it is improved or unimproved.

In a November 2001 letter, the Committee notified property owners that increased assessments under the Amendment were due annually on January 1, and they would be deemed late on February 1. The letter also stated, "[t]here will be a late fee of $10.00 imposed after February 1, . . . and interest charged at 6 [percent] annually."

In 1998 Taufer had begun objecting to assessments on the ground his properties were excepted from the Agreement. The Committee sued Taufer in small claims court twice for unpaid assessments, and it prevailed at trial and in appeals. In 2000 and 2004, judgments were entered against him for $3,600 and $940, respectively. In 2005 the Committee sued Taufer and McGonigle for $3,020 in unpaid assessments. The suit was dismissed in May 2006 after they agreed to pay $4,311 in assessments and attorney fees.

In August 2008 the Committee commenced the instant action against Taufer for $120 in late fees.[4] Under protest, he had paid the $1,200 in 2008 assessments for his four properties, but the payment was late. The claimed $120 included three months' of late fees at $10 per property.

Taufer filed an answer, in propria persona, but he later retained an attorney. He argued his properties are excepted from assessments under the Agreement, and thus he cannot be liable for late fees. As in the earlier cases, he relied on the Agreement's

---

[4]     The complaint named several other defendants, but by the time of trial Taufer was the only remaining defendant.

4

exclusion of properties in Section 3 " 'which have direct access to Pala-Temecula Road by driveway or private road and which do not have any road connections to roads within lands subject hereto.' "  He argued that "while his properties are connected to the subject road [Rancho Heights Road], the roadway travels over property owned by him in fee and therefore his use is not pursuant to the easement created by the . . . Agreement."  His argument was "premised upon the concept that a landowner cannot grant himself an easement over his own property."

Taufer also challenged the election on the Amendment, claiming "the vote . . . should have been taken at an annual meeting or at the very least had a finite time period in which the votes could be cast and that safeguards would exist to ensure the identification of the voting party."  Further, he argued the Committee was not empowered to impose late fees, and alternatively, any late fees must be assessed on an annual rather than monthly basis.

A bench trial was held over several days in late September and early October 2010.  On October 12, 2010, the court filed a proposed statement of decision.  It characterizes Taufer's theory on assessments as "convoluted," and explains "[t]he evidence is clear that the Taufer property does indeed have road connections to roads within lands subject to the provisions of [the Agreement]."  The court determined the matter had been litigated and resolved against Taufer in the previous small claims actions, but "[s]uch a finding is not necessary . . . as it is this court's decision that [Taufer's] contention fails on the merits."

5

The court found the Committee's election procedure was acceptable, explaining: "The Committee followed its traditional practice of soliciting the votes by mail, accepting the ballots without question and leaving it open until enough votes were received to either pass or defeat the proposition. While perhaps not ideal it is not prohibited." The court rejected Taufer's argument the Amendment did not conform to the ballot because "the formula now being applied to determine the amount of a landowner's assessment was not spelled out." The court determined that a letter from the Committee to Taufer and other landowners defeated the argument, and, an earlier "small claims judgment necessarily encompassed the formula utilized by the Committee in determining the amount owed, which was a subject of the ballot in question and which was necessarily adjudicated against the defendant." The court did agree with Taufer that the Committee lacked authority to assess late fees, as there was no such authority in the controlling documents.

On February 24, 2011, the court entered judgment in accordance with its statement of decision. The same day judgment was entered, the parties appeared on an ex parte matter, and Taufer submitted a written disagreement with the statement of decision. He acknowledged the judgment was consistent with the statement of decision.

Both parties moved for designation as the prevailing party for purposes of attorney fees. In April 2011 the court entered an order finding there was no prevailing party.

6

DISCUSSION

I

*Taufer's Appellate Briefing: Waiver*

Taufer represents himself on appeal, and unfortunately, his briefing does not comply with basic principles of appellate practice. In many instances the briefing lacks supporting citations to the record. "[T]he failure to provide citation to the record is a violation of California Rules of Court. . . . A violation of the rules of court may result in the striking of the offending document, the waiver of the arguments made therein, the imposition of fines and/or the dismissal of the appeal. [Citations.] . . . The appellate court is not required to search the record on its own seeking error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.)

Further, the briefing lacks cogent arguments and the citation of supporting legal authorities. " '[P]arties are required to include argument and citation to authority in their briefs, and the absence of these necessary elements allows this court to treat appellant[s'] [contentions] as waived.' " (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007.)

Additionally, Taufer's briefing is largely devoted to issues not before the trial court. For instance, for the first time on appeal he attempts to challenge the validity of the Agreement. The briefing also discusses summary judgment, discovery, and the statute of limitations, which were not at issue at trial. " 'It has long been the general rule and understanding that "an appeal reviews the correctness of a judgment as of the time of

7

its rendition, upon a record of matters which were before the trial court for its consideration." ' " (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1239.)

Taufer "is not exempt from the foregoing rules because he is representing himself on appeal in propria persona. Under the law, a party may choose to act as his or her own attorney. [Citations.] '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]' [Citation.] Thus, as is the case with attorneys, pro. per. litigants must follow correct rules of procedure." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)

Accordingly, we deem Taufer's contentions waived. We nonetheless independently review the record and briefly address the merits of the trial court's rulings.[5]

II

*Assessments*

The usual rules of contract interpretation apply to the court's interpretation of the Agreement. " 'The fundamental rule is that interpretation of . . . any contract . . . is governed by the mutual intent of the parties at the time they form the contract. [Citation.] The parties' intent is found, if possible, solely in the contract's written provisions.' " (*Nelson v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1129.)

---

[5]     The Committee does not contend Taufer lacks standing to prosecute this appeal since he prevailed on the Committee's late fee claim.

" '[T]he whole of a contract is to be taken together, so as to give effect to every part.' " (*Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 799.) "The interpretation of a contract is a judicial function." (*Nesson v. Northern Inyo County Local Hospital Dist.* (2012) 204 Cal.App.4th 65, 87.)

The Agreement states that properties in Section 3 are subject to the Agreement, and the roads maintained under the Agreement include the roads in Section 3, as delineated on an attached parcel map. It is undisputed that three of Taufer's properties are exclusively in Section 3 and the fourth one is partially in Section 3. It is also undisputed that Rancho Heights Road is in Section 3, running easterly from Pala-Temecula Road, Taufer's properties are directly connected to Rancho Heights Road, and Rancho Heights Road provides the only egress and ingress to the properties.

Taufer asserts his properties are within the Agreement's exception for "portions of Sections 3, 10 and 15 which have *direct access* to Pala-Temecula Road by driveway or private road and which *do not have any road connections to roads within lands subject hereto*." (Italics added.) His theory is that since the Rancho Heights Road easement travels over properties he owns in fee, his properties have direct access to Pala-Temecula Road. He asserts, "The Taufer property is not connected to Rancho Heights Road, the road is on the Taufer property."

Nothing in the Agreement, however, supports Taufer's interpretation. To the contrary, as to excepted properties, the Agreement provides: "Non-assessable lands: [¶] "It is recognized that certain of the lands subject to this [A]greement front on [Pala-Temecula Road], a public highway, and will under normal conditions *make no use of*

9

*roads within subject lands.*  The assessments provided for herein shall not be levied against lands which have direct access by driveway or private road to [Pala-Temecula Road], and which *do not have any road connections to roads within lands subject hereto*."  (Italics added.)

Taufer's properties do not front Pala-Temecula Highway, and thus they do not come within this exception.  Taufer's properties make use of Rancho Heights Road, a road within the subject lands.  The Agreement does not suggest that properties over which road easements run are excepted from assessments.  Accordingly, we agree with the court's determination that Taufer's properties are subject to assessments under the Agreement.[6]

III

*Amendment*

Taufer contends "[l]egal precedent and case law requires 100 [percent] approval by members to amend an agreement related to assessments," and thus the Amendment "is considered null and void and not enforceable."  Taufer cites *Hogan v. Pacific Endowment League* (1893) 99 Cal. 248, which explained that a homeowner's association "is . . . the creature of contract, and must be governed by the law of contract," and unless the governing documents specify otherwise, an amendment that "would impair the obligation

_____

[6]      The election for the increase in assessments also asked property owners to decide whether to install an electronic security gate on Rancho Heights Road at a cost of $10,000.  The evidence showed that Taufer's co-owner, McGonigle, voted yes on the security gate, thus tacitly acknowledging the properties are subject to assessments.

10

of the original contract . . . could have been made only by consent of all members to be affected thereby." (*Id.* at pp. 256-257.) Here, however, the Agreement provides, "[n]o further assessments shall be levied for any purpose without the prior approval of membership exercising 65 [percent] of the voting power."

Additionally, Taufer asserts the Committee "by its own admission never received 65 [percent] of the voting power." (Boldface type omitted.) Rancho Heights, however, submitted evidence that 178 or 179 "yes" votes were required to satisfy the 65 percent requirement and the Committee received 181 "yes" votes. Accordingly, his challenge to the sufficiency of the evidence to support the court's ruling lacks merit. "Where appellants challenge the sufficiency of the evidence we defer to the trial court. Our review is limited to whether there is any substantial evidence contradicted or uncontradicted that will support the challenged factual finding." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286.)

Taufer also asserts that voting on the Amendment was required to be held at an annual meeting. The Agreement, however, does not specify an election procedure. The Agreement requires an annual property owner meeting, which owners may attend in person or by proxy. The only election specified to occur at the annual meeting is the election of committee members, if applicable. The issue of proposed assessments, if any, is listed in the order of business, but there is no requirement that an election be held at the meeting. At an annual meeting in 1998, the Committee proposed raising assessments, and believing it had owner support, it arranged for a mail ballot election, a procedure it had undertaken previously.

11

The Committee chairman at the relevant time, Stephen Bochinski, testified that "some of the property owners lived out of state or out of the country," and the Committee "felt that it was best to get everybody to vote." Bochinski added that balloting was done by mail because "an absentee owner might have moved, and so it was hard to track down where the property owner was. We had to go to the county records, and even those weren't updated at times. So it was a process of getting them out to the right people. And then they would come back when they came back, and it sometimes took a couple of years." The Committee's procedure endeavored to include as many property owners as possible, a laudable purpose. We conclude the court's ruling was proper.[7]

IV

*Prevailing Party Determination*

The Agreement includes an attorney fees clause. Civil Code section 1717 (section 1717), subdivision (a), provides for an award of attorney fees to "the party prevailing on the contract." Under section 1717, subdivision (b)(1), the prevailing party is the party "who recovered a greater relief in the action on the contract." Section 1717 allows "those parties whose litigation success is not fairly disputable to claim attorney fees as a matter of right." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876.)

---

[7] Taufer's assertions that the trial court issued its statement of decision before trial, and deprived him of an opportunity to object to the statement's language, are erroneous. The statement was filed on October 12, 2010, well after trial ended, and it notified the parties, "[t]his Proposed Statement [of] Decision shall become the decision of the court unless either party files objections thereto pursuant to California Rules of Court, Rule 3.1590(g)."

12

"If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109.) "[I]n deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." (*Hsu v. Abbara*, *supra*, 9 Cal.4th at p. 876.)

We will not disturb a court's determination of no prevailing party absent a clear abuse of discretion. (*Ajaxo Inc. v. E\*Trade Group, Inc.* (2005) 135 Cal.App.4th 21, 58.) " ' "Discretion is abused when a court exceeds the bounds of reason or contravenes uncontradicted evidence." ' " (*Take Me Home Rescue v. Luri* (2012) 208 Cal.App.4th 1342, 1351.)

Taufer develops no particular argument showing the court abused its discretion by finding no party prevailed for purposes of section 1717. We conclude the court's ruling was within its discretion. Taufer won on the late fees issue, but for purposes of future assessments, the litigation established his properties are subject to assessments under the Agreement and validly adopted Amendment.[8]

---

[8]  " '[T]he doctrine of res judicata gives certain conclusive effect to a former judgment in subsequent litigation involving the same controversy.' [Citation.] The doctrine 'has a double aspect.' [Citation.] 'In its primary aspect,' commonly known as claim preclusion, it 'operates as a bar to the maintenance of a second suit between the same parties on the same cause of action. [Citation.]' [Citation.] 'In its secondary

13

DISPOSITION

The judgment and order are affirmed.  Rancho Heights Road Maintenance

Committee is entitled to costs on appeal.


                                                                     McCONNELL, P. J.

WE CONCUR:


McDONALD, J.


IRION, J.

---

aspect,' commonly known as collateral estoppel, '[t]he prior judgment . . . "operates" ' in 'a second suit . . . based on a different cause of action . . . "as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action." ' "  (*Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 769-770.)