Filed 12/29/20  Bonacci v. Maranhas CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CHRISTOPHER BONACCI et al., | B298194 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC632711) |
| v. | |
| MICHAEL JOSEPH MARANHAS, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry A. Green, Judge.  Affirmed.

Epstein, Becker & Green, David Jacobs, Deanna L. Ballesteros, and Susan Graham, for Plaintiffs and Appellants.

Koletsky, Mancini, Feldman & Morrow, Marc S. Feldman and Brett G. Hampton, for Defendant and Respondent.

Plaintiffs and appellants Christopher Bonacci (Bonacci) and Joy Ingoglia (Ingoglia) (collectively, Plaintiffs) appeal the trial court's denial of their motion for an award of prevailing party attorney fees in a lawsuit brought against their landlord, defendant and respondent Michael Joseph Maranhas (Defendant). We consider whether the trial court abused its discretion when determining Plaintiffs' acceptance of Defendant's $150,000 settlement offer, which Defendant maintained was essentially the costs he would incur to defend the case at trial, did not establish Plaintiffs prevailed "on a practical level" in the case. In considering that issue, we also address Plaintiffs' contention that the trial court's conclusion is predicated on certain erroneous evidentiary rulings.

## I.  BACKGROUND

According to their complaint, Plaintiffs began renting their apartment in 2001 from Defendant's predecessor. When Defendant purchased the property in December 2005, Plaintiffs' rent was $1,550 per month.

In October 2015, almost ten years after he purchased the property, Defendant sent Plaintiffs a new lease, which among other things would have increased their rent to $1,596 per month effective January 1, 2016. Although Plaintiffs refused to sign the new lease until certain repairs had been made, they agreed to pay the increased rent in reliance on promises by Defendant that he would remedy various defective conditions in and around their apartment.

A dispute later arose between the parties over the condition of and repairs to Plaintiffs' apartment. Plaintiffs eventually complained to the Los Angeles Housing and Community

2

Investment Department (HCIDLA), which, in June 2016 ordered Defendant to remedy 18 code violations, including three violations HCIDLA classified as "high" severity violations. Shortly thereafter, Defendant attempted to terminate Plaintiffs' tenancy by applying to HCIDLA for permission to withdraw their apartment from the rental market. One day after HCIDLA denied Defendant's application, Plaintiffs filed suit.

### A.    The Parties' Litigation Objectives as Framed by Their Pleadings

In their September 2016 complaint, Plaintiffs alleged 17 causes of action, including various statutory claims. Among the statutory causes of action were a discrimination claim under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), a retaliatory eviction claim under the Civil Code (Civ. Code, § 1942.5), and a Civil Code claim for breach of the warranty of habitability (Civ. Code, §§ 1941, 1941.1, & 1942.4).

Plaintiffs' complaint sought various forms of relief. Plaintiffs sought economic damages "in an amount to be proven at trial" and alleged the value of their leasehold had been damaged by Defendant's failure to remedy the condition of their apartment "in an amount equal to the rental payments due and paid" during his tenure as their landlord. (In the alternative, they also sought restitution and disgorgement of all rent paid to Defendant.) Plaintiffs also prayed for noneconomic damages, again in an amount to be proven at trial, for emotional distress they alleged they suffered from "hostile . . . behavior" from Defendant's roommate, who allegedly acted as Defendant's agent. In addition, Plaintiffs sought preliminary and permanent injunctions to prohibit their eviction and remedy the code

3

violations, statutory penalties and damages, treble damages, statutory and common law punitive damages, and attorney fees. Although their lease did not include a provision authorizing attorney fees to a prevailing party, the FEHA and Civil Code statutes that served as the basis for some of their alleged causes of action permit a prevailing party to recover attorney fees. (Gov. Code, § 12965, subd. (b); Civ. Code, §§ 1942.4, subd. (b)(2), 1942.5, subd. (i).[1])

In his amended answer, Defendant denied the allegations of Plaintiffs' complaint, asserted 30 affirmative defenses, and contended the complaint should be dismissed with prejudice.

### B.       The Parties' Settlement and Plaintiffs' Motion for Attorney Fees

Two months before trial, and before his motion for summary adjudication could be heard, Defendant served Plaintiffs with offers to compromise pursuant to Code of Civil Procedure section 998 (the section 998 offers). Defendant offered to settle the lawsuit for a total of $150,000 ($15,000 to Bonacci and $135,000 to Ingoglia). The offers were silent on the question of attorney fees but expressly stated they were not admissions of liability.

---

[1]       When Plaintiffs filed their complaint, the applicable attorney fees provision in Civil Code section 1942.5 was found in subdivision (g). Effective January 1, 2018, however, the Legislature amended section 1942.5 so that the attorneys' fee provision was renumbered as subdivision (i). Because the trial court denied Plaintiffs' motion for attorney fees after the amendment of section 1942.5, our references are to that section's subdivisions as currently numbered.

4

Less than two weeks later, without making a counter-offer, Plaintiffs accepted the section 998 offers. After being advised of the settlement, the trial court took Defendant's motion for summary adjudication off calendar.

After accepting the section 998 offers, Plaintiffs filed a motion seeking $819,171.75 in attorney fees ($546,114.50 in hourly fees, augmented by a 1.5 multiplier) on the theory they were prevailing parties on their FEHA and Civil Code causes of action. Plaintiffs argued an award of fees was justified because they "received a net monetary gain of $150,000." Plaintiffs' motion was supported by declarations from their attorneys that addressed the course of the litigation, their hourly rates, and the total number of hours they billed in the litigation. Plaintiffs' attorneys did not discuss their clients' litigation objectives or alleged damages.

Plaintiffs also asked the trial court to take judicial notice of 21 documents filed in the litigation, including discovery-related motions and orders and papers they submitted in support of their opposition to Defendant's motion for summary adjudication. With one exception, Plaintiffs did not attach copies of the identified documents to their request for judicial notice and they did not ask the court clerk to make arrangements to have the unattached documents electronically or physically available to the trial court at the time of the hearing.

In opposition, Defendant argued attorney fees should not be awarded because a net monetary gain by way of a compromise settlement that did not admit liability was insufficient to establish Plaintiffs prevailed in the litigation—especially because the settlement amounts accepted were calculated based on anticipated "'cost[s] of defense.'"

Supporting the opposition, and this last costs of defense argument in particular, was a declaration submitted by Defendant's attorney Marc S. Feldman (Feldman). The declaration described the events leading up to the decision to make the section 998 offers and averred Feldman estimated, before serving the section 998 offers on Plaintiffs, that the cost of completing discovery and conducting a two and a half to three-week trial would be $144,502. Feldman declared he sent his litigation budget to his client's insurance carrier and the carrier then authorized the section 998 offers. Feldman further asserted that it was his understanding, "pursuant to conversations with [P]laintiffs' counsel . . . that [P]laintiffs' demand was over one million dollars." Feldman did not, however, provide any dates or details about his conversations with Plaintiffs' counsel.

Plaintiffs objected to most of the substantive statements in Feldman's declaration. With one exception, Plaintiffs asserted a number of objections to each challenged statement. The exception was Feldman's statement about the $1 million valuation; to that, Plaintiffs objected only on Evidence Code section 1119 grounds.[2]

In addition, Plaintiffs' lead attorney submitted a supplemental declaration. He did not directly dispute Feldman's claim that Plaintiffs sought to recover more than $1 million, but

---

[2] In pertinent part, Evidence Code section 1119 states: "No evidence of anything said . . . in the course of, or pursuant to, a mediation or a mediation consultation is admissible . . . [¶] . . . [¶] All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential." (Evid. Code, § 1119, subds. (a) & (c).)

he stated he never communicated any settlement demands directly to Defendant's counsel at a July 2018 mediation; all such demands were made only to the mediator. Plaintiffs' attorney also stated that in response to an inquiry from Feldman in December 2017 about the scope of a potential settlement, he had estimated Plaintiffs' attorney fees at the time to be several hundred thousand dollars.

### C. The Trial Court's Ruling

The trial court held a hearing in April 2019 on Plaintiffs' motion for attorney fees. The court said it was inclined to find Defendant was the prevailing party because he settled the case for costs of defense and thereby achieved more of his litigation objectives than Plaintiffs, who sought injunctive relief as well as a large monetary recovery through their 17 causes of action. The court stated it also considered the disparity between the amount of Plaintiffs' recovery with the size of its attorneys' fee request: "Well, you wanted $800,000 in fees in a case you settled for $150,000. That's another issue. [¶] . . . [¶] I have a real problem with attorney's fees that are way out of proportion to the value of the case." The court took the matter under submission and said it was overruling Plaintiffs' objections to attorney Feldman's declaration.

In a written ruling filed the following day, the trial court found "[n]either party achieved their goals in so complete a manner as to 'prevail' over the other party." The court elaborated: "The Section 998 offer in this case was a true compromise. [Bonacci] recovered an amount below this court's jurisdictional limit; [Ingoglia] received a larger but still comparatively unremarkable sum. Plaintiffs did not get the

7

injunctions they requested. [Defendant] for his part did not escape unscathed, but he was not required to admit fault and paid no more than he would have if the case had been tried to a defense verdict. Each party got something, and each party gave up something. As a practical matter, there is no prevailing party here."

In crafting its ruling, the trial court relied on the Feldman declaration's statements about the cost of defense, but the court did not refer to or discuss Feldman's statements about his communications with Plaintiffs regarding the asserted $1 million valuation of their case. The court also rested its decision, in part, on the size of Plaintiffs' fee request. The court characterized the amount demanded as "inflated" and stated "that, even if Plaintiffs were the prevailing parties, [the fees] might well be drastically cut." As to evidentiary matters, the court's ruling states Plaintiffs' objections to the Feldman declaration were overruled and 20 of Plaintiffs' 21 requests for judicial notice were denied because they "failed to comply with California Rule of Court Rule 3.1306(c), which requires that Plaintiff[s] submit copies of the material to be judicially noticed."

## II. DISCUSSION

The section 998 offers were made and accepted prior to trial, without a full or summary adjudication of any claim or defense and without an admission of liability. The trial court accordingly had to determine whether either side had prevailed "on a practical level," and the court was within its discretion to decide that Plaintiffs had not prevailed despite their unqualified acceptance of the pre-trial settlement amount defendant chose to offer. The court did not rest its ruling on impermissible

8

consideration of settlement communications and the law does not preclude the court from relying on an inflated attorney fees request to conclude no award of attorney fees is warranted. There was no other evidentiary error (Plaintiffs mount no serious appellate challenge to the admissibility of the Feldman declaration and the trial court's judicial notice ruling does not warrant reversal), so we shall affirm the decision not to award fees.

### A. The Trial Court Did Not Err in Denying Plaintiffs' Motion for "Prevailing Party" Attorney Fees

Under FEHA, a tenant who suffers discrimination "may" recover attorney fees against a landlord if the tenant is the "prevailing party" in litigation. (Gov. Code, § 12965, subd. (b).) Civil Code sections 1942.4 (authorizing an action against a landlord to repair substandard housing) and 1942.5 (prohibiting retaliation against tenants) state a court "shall" award reasonable attorney fees and costs to a "prevailing party" in litigation. (Civ. Code, §§ 1942.5, subd. (b)(2), 1942.5, subd. (i).) Neither FEHA nor the Civil Code statutes define "prevailing party," however.

"'In the absence of legislative direction in the attorney fees statute, the courts have concluded that a rigid definition of prevailing party should not be used. [Citation.] Rather, prevailing party status should be determined by the trial court based on an evaluation of whether a party prevailed "'on a practical level,'" and the trial court's decision should be affirmed on appeal absent an abuse of discretion.' [Citation.]" (*Sharif v. Mehusa* (2015) 241 Cal.App.4th 185, 192.)

9

Among the factors a trial court must consider in determining whether a litigant is a prevailing party is "the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 622.) A party's litigation objectives are defined by "the pleadings, trial briefs, opening statements, and similar sources." (*Hsu v. Abarra* (1995) 9 Cal.4th 863, 877 (*Hsu*); see also *Marina Pacific Homeowners Assn. v. Southern California Financial Corp.* (2018) 20 Cal.App.5th 191, 204 ["We reject the notion that . . . settlement communications constitute 'pleadings, trial briefs, opening statements, and similar sources' that *Hsu* tells us the trial court is to use . . ."].)

In determining prevailing party status, our Supreme Court has instructed courts to "respect substance rather than form." (*Hsu, supra*, 9 Cal.4th at 877.) "'Typically, a determination of no prevailing party results when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought.' [Citation.]" (*Id.* at 875; accord, *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 ["If neither party achieves a complete victory . . . , it is within the discretion of the trial court to determine which party prevailed . . . or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees"].) On the other hand, when the outcome of the litigation is "purely good news for one party and bad news for the other," our Supreme Court has instructed that a "trial court has no discretion to deny attorney fees to the successful litigant." (*Hsu, supra*, at 876.)

We review a trial court's prevailing party determination using the abuse of discretion standard of review. (*Chavez v. City*

10

*of Los Angeles* (2010) 47 Cal.4th 970, 989 (*Chavez*).) Under that deferential standard, there is no cause for reversal.

The parties' settlement was neither purely good news for Plaintiffs nor purely bad news for Defendant. Plaintiffs obtained a monetary recovery ($150,000), but it was significantly less than the amount of damages contemplated by their complaint. Plaintiffs sought to recover—at a minimum—all the rent they paid Defendant, an amount that totaled more than $200,000.[3] In addition to these rent payments, Plaintiffs also sought damages for emotional distress, various statutory penalties, other damages (including treble damages), and punitive damages. On the other side, Defendant obviously did not achieve an unqualified defense verdict, but there was evidence the trial court could credit (unrebutted by Plaintiffs) that the accepted settlement amount was not much more than Defendant would have paid to take the case through trial. The settlement amount and attendant circumstances, in our view, support the trial court's determination that there was no prevailing party and no award of attorney fees was warranted.

The trial court also considered what it believed was an inflated fee request from Plaintiffs (over $800,000 in fees, including their proposed multiplier, for a $150,000 settlement) in declining to award attorney fees. Contrary to Plaintiffs' assertion that this was improper, it was in fact a valid additional reason

---

[3]     As alleged in their complaint, Plaintiffs paid Defendant a total of $217,920 in rent between January 2006 and August 2018 ($186,000 between January 1, 2006, and December 31, 2015, and $31,920 during the period between January 1, 2016, and their acceptance of the section 998 offers in August 2018).

11

supporting the trial court's discretionary decision—as our Supreme Court's decision in *Chavez* illustrates.

In *Chavez*, the Supreme Court affirmed a trial court's denial of attorney fees to a plaintiff who prevailed on a FEHA retaliation claim and reasoned that "in light of [the] plaintiff's minimal success and grossly inflated attorney fee request, the trial court did not abuse its discretion in denying attorney fees." (*Chavez*, *supra*, 47 Cal.4th at 976.) The Court elaborated: "Whether plaintiff was entitled to an award of attorney fees . . . *requires* consideration of another established principle governing fee awards [besides litigation success]: 'A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.' [Citations.] Here, the trial court reasonably could and presumably did conclude that plaintiff's attorney fee request in the amount of $870,935.50 for 1,851.43 attorney hours was grossly inflated when considered in light of the single claim on which plaintiff succeeded, the amount of damages awarded on that claim [$1,500 in economic damages and $10,000 in noneconomic damages], and the amount of time an attorney might reasonably expect to spend in litigating such a claim." (*Id.* at 990-991.) The circumstances in this case are not materially different.

Further, we do not believe, as Plaintiffs argue, that the trial court's attorney fees ruling was influenced by consideration of an impermissible factor. Plaintiffs claim the trial court relied on statements in the Feldman declaration about their case valuation communicated during confidential settlement

communications.[4]  But the record does not show the trial court relied on Feldman's assertion in reaching its final decision.  The trial court remarked on Feldman's statement about Plaintiffs' purported $1 million valuation at the hearing, but the court's ruling does not rely upon, examine, or even reference that statement.  We review the court's ruling, not its colloquial musings and questions.[5]  (See, e.g., *In re Cheynne B.* (2012) 203 Cal.App.4th 1361, 1367, fn. 11 ["A trial court's written statement of decision cannot be impeached by oral expressions of the trial court to the contrary"].)

---

[4]      There appears to be a dispute as to the source of Feldman's $1 million valuation statement.  The trial court overruled Plaintiffs' objection that the statement was based on protected settlement communications.  As discussed *post*, Plaintiffs do not meaningfully challenge that ruling.

[5]      Plaintiffs also maintain the trial court erred when it took into account the fact that they failed to obtain the injunctive relief prayed for in their complaint.  In support of their argument, Plaintiffs rely heavily on a reporter's transcript of a November 30, 2017, hearing where Defendant's counsel purportedly made statements about his client's changed position on eviction.  Plaintiffs lodged the transcript with the trial court, but they did not ask the court to take judicial notice of it.  Even if the transcript was appropriately before the trial court, Plaintiffs never abandoned their request for injunctive relief and, without disclaiming the need for such relief, the trial court was not prohibited from considering it in its analysis.

13

*B. The Trial Court's Evidentiary Rulings Do Not Warrant Reversal*

Plaintiffs' opening brief asserts defense attorney Feldman's declaration was "inadmissible." But Plaintiffs never actually argue why the declaration was inadmissible nor do they argue how the trial court erred in overruling the evidentiary objections they raised in the trial court. The point is therefore waived; a conclusory assertion of error is not enough. (*Cahill v. San Diego Gas & Elec.* (2011) 194 Cal.App.4th 939, 956 ["'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"'"].)

Plaintiffs also argue the trial court wrongly refused to judicially notice certain court filings and orders pursuant to Evidence Code sections 452 and 453.[6] Rule 3.1306(c) of the California Rules of Court states: "A party requesting judicial notice of material under Evidence Code sections 452 or 453 must provide the court and each party with a copy of the material. If the material is part of a file in the court in which the matter is being heard, the party must: [¶] (1) Specify in writing the part of the court file sought to be judicially noticed; and [¶] (2) Either

---

[6] Section 452 provides that a court "may" take judicial notice of, among other things, the records of "any court of this state." (Evid. Code, § 452, subd. (d).) Section 453 provides that the trial court "shall take judicial notice of any matter specified in Section 452 if a party requests it" and (1) gives each adverse party sufficient notice of the request; and (2) "[f]urnishes the court with sufficient information to enable it to take judicial notice of the matter."

14

make arrangements with the clerk to have the file in the courtroom at the time of the hearing or confirm with the clerk that the file is electronically accessible to the court." Plaintiffs did not ask the court clerk to make the requested documents available for the trial judge at the time of the attorney fees hearing and the record is devoid of any attempt by Plaintiffs to confirm separately with the clerk that the requested documents would be electronically available. This noncompliance with the Rules of Court establishes reversal is not warranted because the trial court declined to judicially notice the documents in question. (See *Willis v. State of California* (1994) 22 Cal.App.4th 287, 291 [no error in denying judicial notice where plaintiff simply requested the court take judicial notice without appending any information].)

## DISPOSITION

The order denying Plaintiffs' motion for attorney fees is affirmed. All parties shall bear their own costs on appeal in the interests of justice.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.


We concur:



RUBIN, P. J.



MOOR, J.