Filed 3/4/26  Hakim-Baba v. Desai CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| YAGHOOB HAKIM-BABA,<br><br>    Plaintiff, Cross-defendant and<br>Appellant,<br><br>    v.<br><br>HITESH DESAI et al.,<br><br>    Defendants, Cross-complainants<br>and Respondents. | H050787<br>(Monterey County<br> Super. Ct. No. 20CV001292) |

Persuaded by defendants Hitesh Desai, Jayesh Desai, and Mohammad Rezai, plaintiff Yaghoob Hakim-Baba signed an agreement to purchase an interest in defendant I & P Brothers, LLC (I & P).  Hakim-Baba came to regret the purchase, but not before paying much of the purchase price.  When the parties were unable to agree on when and how to refund Hakim-Baba the sum he had paid toward the purchase, Hakim-Baba sued.  Defendants cross-complained for breach of contract.  The parties settled, with Hakim-Baba electing to rescind the agreement rather than pursue his claims for tort damages and defendants abandoning their cross-claim.  Implementing the rescission remedy, defendants refunded Hakim-Baba all the money he had paid, with half the prejudgment interest he sued for; Hakim-Baba returned his interest in I & P.  Hakim-Baba recovered none of the damages he had claimed as the costs incurred in raising the capital to fund the now-rescinded purchase.  When Hakim-Baba sought

contractual attorney fees, contending that he was the prevailing party, the trial court denied his request, finding that neither party obtained a greater recovery.  We affirm.

## I.    BACKGROUND

### A.    *The Pleadings*

Hakim-Baba sued defendants in April 2020.  Hakim-Baba alleged he paid defendants $3.9 million in connection with an agreement that would provide him a membership interest in I & P (the "I & P Purchase Agreement") and defendants had used about $2 million of Hakim-Baba's payment to buy a property on Carmel Valley Road.  But one of the individual defendants took title to the Carmel Valley property.  Hakim-Baba alleged three causes of action.  First, Hakim-Baba sought title to the Carmel Valley property through a quiet title claim.  Second, Hakim-Baba sought damages, including statutory double damages and punitive damages, through a financial elder abuse claim.[1]  Third, Hakim-Baba sought rescission, including a return of his $3.9 million and the economic costs he incurred to procure those funds.  Hakim-Baba sought interest on all "damages and/or restitution awarded."  Hakim-Baba alleged his contractual entitlement to attorney fees in connection with his financial elder abuse and rescission claims.

In his operative fourth amended complaint, filed about a year later, Hakim-Baba included more detail in his factual allegations and more causes of action.  Hakim-Baba added that defendants used a spreadsheet to induce him to enter the I & P Purchase Agreement when his capacity was diminished.  The spreadsheet was the basis for Hakim-Baba's agreement to pay $4,661,113 for a 25 percent membership interest, but the spreadsheet overvalued I & P's property holdings and undervalued its debt.  In addition to his original causes of action, Hakim-Baba asserted causes of action for intentional misrepresentation, concealment, and breach of fiduciary duty claiming the same $3.9

---

[1] Hakim-Baba included in his prayer for relief a request for treble damages.

2

million he paid in connection with the contract as damages. Hakim-Baba alleged that defendants had promised to refund his money if he canceled the deal but failed to do so. Under the rescission cause of action, Hakim-Baba included within his damages "the cost of funds and interest at the legal rate from the date [his] funds were delivered to" defendants.

In their answer, defendants admitted that Hakim-Baba paid $3.9 million towards the purchase of an interest in I & P, that Hakim-Baba had asked for his money back, and that they had offered him his money back. In a cross-complaint, defendants alleged that Hakim-Baba had breached the I & P Purchase Agreement by failing to pay the full purchase price and sought damages including the balance of his purchase price, lost profits, opportunity costs, and increased financing expenses.

**B.** *Settlement*

Before Hakim-Baba filed suit, defendants made three settlement offers.

First, defendants proposed converting Hakim-Baba's "invest[ment]" into a loan to I & P secured by a second deed of trust against two residential properties. The loan would accrue interest at an annual rate of 7 percent, paid monthly, and I & P would pay the principal within about a year.

Second, having waited a few weeks without receiving a response, I & P asserted its position that Hakim-Baba was a member of I & P under a binding agreement but modified its settlement offer. Again, the framework of the deal was to treat Hakim-Baba's money as a loan to I & P, but this time as a first position loan on the Carmel Valley property and a second position loan on another with repayment forecast in about seven months. To facilitate part of the repayment, the Carmel Valley property would immediately be listed for sale.

Hakim-Baba made a partial counteroffer, proposing that the Carmel Valley property be transferred to him in exchange for a credit. His proposal would have left the

3

parties to reserve their rights concerning the difference between the settlement value of the Carmel Valley property and the amount he had already paid.

Third, defendants responded with their "final" offer. Defendants proposed two alternatives for partial satisfaction of the refund due: (1) grant Hakim-Baba title to the Carmel Valley property for a $2.3 million credit; (2) sell the Carmel Valley property, paying Hakim-Baba $2 million from the proceeds. In either scenario, the balance still owed to Hakim-Baba would constitute a second-position loan on another property, to be satisfied from the proceeds of the anticipated sale of that property in about six months.

Hakim-Baba did not accept this final offer and sued. About two years after Hakim-Baba filed his complaint, defendants accepted Hakim-Baba's pretrial Code of Civil Procedure section 998 offer.

Pursuant to the settlement, the trial court entered judgment in Hakim-Baba's favor and against defendants on the operative complaint and cross-complaint. The judgment rescinded the I & P Purchase Agreement, extinguishing Hakim-Baba's interest in I & P and awarding Hakim-Baba $3.89 million in restitution, for which defendants were jointly and severally liable.[2] And the judgment awarded Hakim-Baba $357,720.14 in prejudgment interest, calculated as simple interest at the rate of 3.5 percent per annum through the acceptance of the Code of Civil Procedure section 998 offer. The trial court reserved jurisdiction to address prevailing party costs and attorney fees. The parties agreed to dismiss their respective complaints with prejudice after the judgment was satisfied.

## C.   *The Prevailing Party Determination and Appeal*

Hakim-Baba sought over $800,000 in attorney fees, relying on the fee provision in the I & P operating agreement. The operating agreement provides: "In the event that any

---

[2] Hakim-Baba withdrew $10,000 from I & P's bank account while the litigation was pending. The settlement amount accounted for this withdrawal.

dispute between or among the Company, the Manager and/or the Members with respect to the Company or this Agreement should result in litigation or arbitration, the prevailing party in the dispute shall be entitled to recover from the other party all reasonable fees, costs and expenses of enforcing any right of the prevailing party, including without limitation reasonable attorneys' fees and expenses."

The trial court denied the request, reasoning that "the compromise settlement did not result in [Hakim-Baba] completely prevailing on all contract claims" and "neither party obtained a 'greater recovery,' even though both recovered something under the restitution obtained." Hakim-Baba timely appealed from the denial of his postjudgment fee request.

## II.    DISCUSSION

### A.    *Legal Principles and Standard of Review*

"Attorney fees are not normally recoverable as costs" absent " 'a legal basis . . . grounded in an agreement, statute, or other law.' " (*Riverside Mining Limited v. Quality Aggregates* (2024) 104 Cal.App.5th 269, 275, italics omitted.) Unless attorney fees are "specifically provided by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." (Code Civ. Proc., § 1021.)

"[A] contractual provision may provide that the party that prevails in litigation over noncontractual claims shall recover its attorney fees." (*Maynard v. BTI Group, Inc.* (2013) 216 Cal.App.4th 984, 990 (*Maynard*).) "If the attorney fee provision does encompass noncontractual claims, the prevailing party entitled to recover fees normally will be the party whose net recovery is greater, in the sense of most accomplishing its litigation objectives, whether or not that party prevailed on a contract cause of action." (*Id*. at p. 992.)

"If the contractual [fee] provision limits an award of attorney fees to the party who has prevailed *on the contract*, fees may be awarded only to that party, and Civil

Code section 1717 is invoked."[3]  (*Maynard, supra,* 216 Cal.App.4th at p. 990, italics added; see also *Waterwood Enterprises, LLC v. City of Long Beach* (2020) 58 Cal.App.5th 955, 965–966 (*Waterwood*).)  Under section 1717, subdivision (b)(1), subject to exceptions not applicable here, "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract.  The court may also determine that there is no party prevailing on the contract for purposes of this section."

Where a contract is written broadly enough to encompass both tort and contract claims in issue, courts apply ordinary rules of contract interpretation to determine what the parties intended by their reference to a prevailing party.  (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 (*Santisas*).)  In the absence of a contractual definition or extrinsic evidence, courts may resort to the ordinary or popular meaning of " 'prevailing party.' " (*Id.* at p. 609.)  To do so, "a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise."  (*Id.* at p. 622.)

For fee provisions subject to section 1717, when the trial court "renders a simple, unqualified decision in favor of [one party] on the only contract claim in the action" that party "is unquestionably the sole victor" and "the prevailing party on the contract as a matter of law."  (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 865–866 (*Hsu*).)  A simple, unqualified decision is one in which "the results of the litigation on the contract claims are not mixed" but rather "purely good news for one party and bad news for the other"; in such a case, "a trial court has no discretion to deny attorney fees to the successful litigant."  (*Id.* at pp. 875–876, italics omitted.)  But absent a complete and one-sided victory on all contract claims, " 'it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees.' " (*In re Tobacco Cases I* (2013)

---

[3] Undesignated statutory references are to the Civil Code.

216 Cal.App.4th 570, 577 (*Tobacco Cases I*).)  In exercising that discretion, " 'the trial court is to compare the relief awarded on the contract . . . claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources' " and " ' "the extent to which each party [had] succeeded and failed to succeed in its contentions." ' " (*Ibid*.) " '[I]n determining litigation success, courts should respect substance rather than form, and to this extent should be guided by "equitable considerations."  For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective.' " (*Ibid*.)

"The trial court's determination of the prevailing party for purposes of awarding attorney fees is an exercise of discretion which should not be disturbed on appeal absent a clear showing of abuse of discretion." (*Ritter & Ritter, Inc. Pension & Profit Plan v. The Churchill Condominium Assn.* (2008) 166 Cal.App.4th 103, 126; see also *Tobacco Cases I*, *supra*, 216 Cal.App.4th at p. 578.)

**B.      *Whether Hakim-Baba Won a Simple, Unqualified Victory***

Hakim-Baba claims a " 'simple, unqualified victory' " on the contract despite failing to secure all the monetary relief he requested in connection with his rescission claim.  Even if the contractual fee provision, despite the breadth of its plain language, were limited by section 1717, the trial court acted within its discretion in determining that the judgment was not a simple, unqualified victory.[4]

Leaving aside Hakim-Baba's tort and financial elder abuse claims, Hakim-Baba sought (1) rescission of the I & P Purchase Agreement—defendants' return of his

---

[4] The fee provision is bilateral, so the fee request does not depend on the language in section 1717, subdivision (a) making unilateral fee provisions bilateral.  While section 1717 authorizes fee awards to "the party prevailing on the contract," the fee provision before us is not limited to contractual claims.  (See *Maynard*, *supra*, 216 Cal.App.4th at p. 990–995.)

outstanding principal totaling almost $3.9 million in exchange for his return of his stake in I & P; (2) his cost of procuring the principal he paid toward the purchase price; and (3) seven percent interest on his principal and damages. Defendants, in contrast, asserted a cross-claim seeking to (1) hold Hakim-Baba to the contract; (2) require Hakim-Baba to pay the balance of the purchase price; and (3) require Hakim-Baba to pay damages incurred because of his failure to timely pay the full purchase price.

Through settlement, Hakim-Baba achieved some, but not all, of his contract-based objectives: (1) Hakim-Baba rescinded the contract for full restitution (avoiding any contractual cross-claims); and (2) obtained 3.5 percent simple interest on his principal. Hakim-Baba did not achieve all his objectives: (1) He recovered none of the costs of procuring principal, which he had claimed as damages;[5] and (2) he did not obtain the other 3.5 percent interest, valued at over $350,000, on his refunded payment.

This is a mixed result.

Hakim-Baba's reliance on *Ajaxo Inc. v. E\*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 59 is misplaced. In *Ajaxo*, this court affirmed the trial court's determination that the plaintiff prevailed on the contract, despite a nonsuit on damages for misappropriation of plaintiff's trade secrets: Plaintiff "won a simple, unqualified verdict on the breach of contract claim" by "recover[ing] greater relief in the action on

---

[5] The amount of Hakim-Baba's claimed rescission damages is not clearly evidenced in the record. At the motion hearing, defense counsel represented that these damages constituted $50,000 Hakim-Baba paid to borrow the sum he paid to defendants—plus associated but unquantified legal fees. In his appellate brief, Hakim-Baba dismisses the $50,000 as a "trifle"—citing as support only counsel's argument at the motion hearing. We decline to accept counsel's argument in support of the fee request as evidence. (Cf. *City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 465.) Even if we accepted counsel's argument as evidence, the amount would still exceed $50,000 by an undisclosed sum. And while Hakim-Baba suggests that difficulty valuing his compensatory damages or punitive damages claims redounds to his benefit, it is of course Hakim-Baba who bears the burden of affirmatively demonstrating that the trial court abused its discretion in denying his fee request.

the contract" than any defendant. (*Ajaxo*, at p. 59.)  Hakim-Baba invokes the $19.2 million in damages that Ajaxo had been denied in the trial court, analogizing Hakim-Baba's abortive pursuit of rescission damages.  But nowhere in his briefing does Hakim-Baba acknowledge that Ajaxo's claim for $19.2 million was not for breach of contract but for misappropriation of his trade secrets.  *Ajaxo* does nothing to make Hakim-Baba's mixed result a simple and unqualified one.

Nor does *Pacific Custom Pools, Inc. v. Turner Construction Co.* (2000) 79 Cal.App.4th 1254 compel a result in Hakim-Baba's favor.  There, in litigation initiated by a third party, Pacific Custom Pools, Inc. (PCP) sued Turner for $2 million, but Turner won summary judgment.  (*Id.* at pp. 1258–1259.)  Turner later voluntarily dismissed its own $20,000 indemnification claim against PCP, given the time and expense necessary to pursuing it.  (*Id*. at pp. 1270–1273.)  The trial court denied Turner attorney fees, ruling that the fee provision in the contract between Turner and PCP applied only to actions *against* PCP.  (*Id*. at pp. 1268–1269.)  The appellate court reversed that determination (*id*. at p. 1270) and ruled that Turner should have been awarded fees as the prevailing party (*Id*. at p. 1273).  On the latter point, Turner's election to dismiss its $20,000 indemnification claim did not detract from its " ' "simple, unqualified win" ' " on summary judgment of PCP's $2 million claim.  (*Id*. at p. 1272.)  Here, in contrast, Hakim-Baba's litigation goals—even limited to the parties' contract claims—were unambiguously to recover *both* the $3.9 million he had paid toward the purchase of his interest in I & P *and* damages for rescission, and his success in achieving his goals was mixed.  Hakim-Baba did not voluntarily dismiss any claim independent of the judgment on the settlement.  Nor is there any evidence that his reason for relinquishing his claim for unquantified rescission damages was merely that the anticipated litigation expense outweighed the value of the claim.

Hakim-Baba's contentions that he won unqualified victories on discrete contractual issues do not help.  The statute requires an analysis of which party, if any,

recovered greater relief in the contract action. (See *Tobacco Cases I*, *supra*, 216 Cal.App.4th at p. 577.)

**C.** **Whether the Trial Court Abused its Discretion by Concluding that Neither Party Recovered Greater Relief**

Alternatively, Hakim-Baba contends that he won such a lopsided result on the contract claims that the trial court abused its discretion in ruling that neither party recovered greater relief. At bottom, the parties dispute which of them most desired rescission as a resolution to this case. Rejecting Hakim-Baba's contention that we must disregard how his tort claims shaped the parties' approach to the contract litigation, we conclude that the trial court did not exceed its discretion.

**1.** **Consideration of Hakim-Baba's Tort Claims**

The parties dispute whether Hakim-Baba's tort claims may be considered in assessing whether Hakim-Baba prevailed. We conclude that they may.

First, Hakim-Baba contends that the trial court did not consider the tort claims. We disagree.

Nowhere did the trial court say it was disregarding Hakim-Baba's tort claims.[6] Rather, to support its conclusion that plaintiff did not win a substantive victory, the trial court invoked "the unique circumstances of this litigation," the defensive nature of defendants' cross-claim, and the fact that rescission provided benefits to both parties. We understand the trial court's reference to the defensive purpose of defendants' contractual cross-claim to recognize defendants' success in defending against Hakim-Baba's tort claims. Indeed, Hakim-Baba's own argument at the hearing on the fee motion emphasized this connection: "[T]his is important, if we did not elect rescission and we got damages under the tort claims, we would have then been liable for a million dollars

---

[6] The trial court declined to consider Hakim-Baba's quiet title claim because he voluntarily dismissed it.

10

and change on the cross[-]complaint for a breach of contract, and there's no indication we would have gotten anywhere near 3.9 million dollars" in tort damages.[7] Moreover, in finding that the defensive cross-complaint supported a determination that neither party had prevailed, the trial court focused on Hakim-Baba's recovery of only "part of the relief sought on the complaint," without limiting its consideration to any subset of his claims.

The trial court was required to assess the parties' litigation objectives in assessing whether they prevailed on their contract claims. (See *Hsu*, *supra*, 9 Cal.4th at p. 877; *Santisas*, *supra*, 17 Cal.4th at p. 622.) Our Supreme Court has said that a defendant can be deemed a prevailing party where both parties assert contract claims, neither recovers anything, and the defendant's contract claim is "essentially defensive in nature." (*Hsu*, at p. 875, fn. 10.) The equitable assessment of a party's objectives, defensive or otherwise, is not limited to cases where no relief was awarded—even a party that is denied direct relief on a claim may be the prevailing party if it otherwise achieved its main litigation objective. (See *Tobacco Cases I*, *supra*, 216 Cal.App.4th at p. 577.)

The trial court could reasonably conclude that the practical purpose of defendants' contractual cross-claim was to defend against Hakim-Baba's tort claims by deterring him from pursuing them, thereby encouraging him to settle for rescission. We recognize that defendants' contractual cross-claim is facially offensive—defendants alleged that Hakim-Baba breached a contract and was required to pay them damages. But defendants filed the cross-claim in a case where the prospect of contractual damages did, according to Hakim-Baba's own argument, influence his decision to abandon his tort claims. So we interpret the trial court's order as reflecting a determination that defendants brought their

---

[7] The trial court's finding that the cross-complaint was defensive necessarily means that its purpose was to defeat some or all of the claims in Hakim-Baba's complaint. Hakim-Baba has not argued that the purpose of the cross-complaint was to defend against his rescission claim, to the exclusion of defending against his tort claims.

contract claim to deter Hakim-Baba from pursuing tort claims and to incentivize a rescission settlement—a middle ground acceptable to both parties.

Second, as Hakim-Baba recognizes, the "broad" fee provision in the operating agreement authorizes fees arising from " 'any dispute' " between members with respect to the company. All Hakim-Baba's claims emanate from the agreement by which he purchased a membership in the company, so all his claims are within the scope of the fee provision in the operating agreement.

"[I]f the attorney fee provision encompasses fees incurred in connection with any dispute arising out of the contract, in order to determine the prevailing party the contract cause of action should not be viewed in isolation from other related claims that were litigated. . . . While prevailing on the contract is alone significant if the attorney fee provision limits fee entitlement to the party prevailing on the contract claim, it is not controlling if the provision authorizes fees to the party prevailing in the resolution of the entire controversy." (*Maynard*, *supra*, 216 Cal.App.4th at p. 993.)

Third, even if section 1717 trumps the breadth of the parties' fee provision and limits our consideration to Hakim-Baba's rescission claim and defendants' breach of contract claim, both parties' objectives in asserting those claims were intertwined with Hakim-Baba's tort claims.[8] As we explained, the trial court reasonably concluded that defendants' cross-claim was defensive. And, in context, the claims defendants were defending by asserting a claim on the contract were Hakim-Baba's tort claims, which

---

[8] In *Santisas*, our Supreme Court held that section 1717 permitted a successful defendant to recover—as an element of costs—attorney fees incurred in defending against tort claims included in an action on a contract. (*Santisas*, *supra*, 17 Cal.4th at pp. 615, 622.) But the court held that section 1717 barred the defendant from recovering attorney fees incurred in defending the breach of contract claim in the same action, because the breach of contract claim was voluntarily dismissed. (*Id*. at pp. 622–623.) Three justices dissented on the latter issue, arguing that section 1717 should have no impact on the effect of the bilateral fee provision at issue. (*Id*. at pp. 624, 631 (conc. & dis. opn. of Baxter, J.).)

12

required him to affirm the contract. So we assume that the bare fact of Hakim-Baba's failure on his tort claims is not itself relevant. But to the extent his tort claims spurred defendants' assertion of their contract claim, and defendants' contract claim in turn spurred Hakim-Baba to settle for rescission and only partial associated monetary relief, we will not require a trial court to ignore the interrelationship between all claims. The trial court was bound to consider defendants' litigation objectives in pursuing their contract claim, and in doing so was free to determine these objectives were to deter Hakim-Baba from pursuing his tort claims.

In this context, we do not read *Hsu* to preclude consideration of defendants' success in fending off Hakim-Baba's tort claims by asserting a contractual cross-claim. In *Hsu*, the court reasoned that the "evident[]" purpose for a legislative amendment replacing " 'prevailing party' " with " 'party prevailing on the contract' " was to "emphasize that the determination of prevailing party for purposes of contractual attorney fees [is] to be made without reference to the success or failure of noncontract claims." (*Hsu, supra*, 9 Cal.4th at pp. 873–874; see also *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 357–358.)[9] But *Hsu* was straightforward: The only claim was plaintiffs' claim for specific performance. (*Hsu*, at pp. 867–868.) The defendants defeated the claim, so the defendants prevailed. (*Id*. at p. 868.) Here, in contrast, crediting the trial court's determination that the breach of contract cross-claim was asserted for defensive purposes, we cannot measure the success of defendants' claim without considering whether they achieved their defensive purpose by defeating Hakim-Baba's tort claims. Indeed, *Hsu* directs courts to "respect substance rather than

---

[9] The parties dispute both whether (1) the tort claims were directly subject to the trial court's consideration as claims on a contract; and (2) Hakim-Baba's quiet title claim, which the trial court disregarded based on his voluntary dismissal, should have been considered. Even if Hakim-Baba is correct on both issues, they do not assist him. There was a proper basis to consider the results of the tort claims and the trial court did not consider the quiet title claim.

13

form," to the point that a party "denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective." (*Id*. at p. 877.) And given the fee provision here, we cannot determine which party prevailed without considering the functional relationship among the claims between members of the company. (See *Maynard*, *supra*, 216 Cal.App.4th at pp. 990–992.)

So Hakim-Baba's success, or lack thereof, in obtaining the litigation objectives reflected by his pursuit of tort claims is, in this case, a proper factor that the trial court considered in deciding that he was not the prevailing party for the purpose of his request for contractual attorney fees.

### 2. *Whether Hakim-Baba Won a Lopsided Result*

Hakim-Baba argues that even if he did not win an unqualified victory on the contract claims, their result was still so lopsided in his favor that the trial court abused its discretion in finding that there was no clear winner. But we discern no abuse of discretion in the trial court's determination that in "the unique circumstances of this litigation" neither side obtained greater recovery, whether on the contract or in the litigation overall.

While the parties dispute which of them desired rescission, the record permits the trial court's reasonable inference that both were amenable.

On the pleadings, it was agreed that defendants had offered to refund Hakim-Baba the $3.9 million he had paid.[10] And in sworn declarations the individual defendants

---

[10] In *MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, the court evaluated whether MacQuiddy was entitled to fees under a statute that did not define prevailing party. In that context, as here, " ' " 'a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives.' " ' " (*Id*. at p. 1048.) The defendant admitted liability under the " ' "lemon law" ' " in its answer and the proper amount of its $68,000 payment to repurchase the car was never litigated. (*Id*. at pp. 1043, 1048.) The only issue the parties litigated was whether the defendant was also liable for a civil penalty, and the defendant

14

confirmed their desire to withdraw from their business relationship with Hakim-Baba.[11] The only apparent means for defendants to end the relationship were to rescind the contract (requiring at least a refund of the $3.9 million) or to negotiate a new deal to buy out Hakim-Baba's interest. In their answer to Hakim-Baba's rescission claim, defendants framed their dispute with Hakim-Baba as a disagreement about repayment terms.[12] At the same time, Hakim-Baba was prosecuting tort claims by which he sought a multiplier on his compensatory damages and punitive damages, a result that could have left him with both a monetary recovery and a share of the business. In their declarations, the individual defendants represented that Hakim-Baba was (improperly, in their view) seeking substantially more than rescission. The trial court could reasonably conclude that defendants' objective in this litigation was, at least to the same extent it was

---

prevailed on the issue. (*Id*. at p. 1048.) The reviewing court held that the trial court was permitted to conclude that MacQuiddy was not a prevailing party because he did not achieve his main litigation objective, obtaining a civil penalty. (*Ibid*.) Here, too, there was no dispute about the amount defendants would have to refund Hakim-Baba. While the parties' pre-suit settlement negotiations, if considered, might cast doubt on how quickly defendants could make that payment, one could still reasonably infer that Hakim-Baba chose to pursue litigation to secure more ambitious relief than rescission.

[11] The declarations, filed in opposition to separate motions by Hakim-Baba for a preliminary injunction and for summary adjudication, were resubmitted in opposition to Hakim-Baba's fee motion.

[12] Defendants attached to their answer correspondence sent during the parties' prelitigation settlement negotiations. The parties dispute whether we may properly consider their prelitigation settlement negotiations, which the trial court did not mention in its analysis. (See *Waterwood*, *supra*, 58 Cal.App.5th at pp. 967–968 [ruling that settlement communications are irrelevant to the prevailing party analysis].) Even if considered, the negotiations do not materially tilt the scales in either direction. Simply, they suggest that defendants were prepared to settle by making a securitized promise to refund Hakim-Baba's payment, but that Hakim-Baba for reasons articulated in a declaration from his counsel believed the offer did not provide adequate security to ensure the refund would be paid. And Hakim-Baba never made an offer for a complete settlement of his claims. So neither party proposed that the case be resolved on terms equivalent to those on which the matter eventually settled.

15

Hakim-Baba's, to secure rescission—refunding Hakim-Baba's payment to avoid a tort recovery and exclude him from their business enterprise.

To be sure, the record could have supported a different conclusion by a reasonable trier of fact. It was Hakim-Baba alone who pleaded a claim for rescission, whereas defendants' contractual claim was for breach. But Hakim-Baba, like defendants, pleaded claims (his tort claims) that were irreconcilable with rescission. (See, e.g., *Wong v. Stoler* (2015) 237 Cal.App.4th 1375, 1384 [describing necessary election between "disaffirm[ing] the contract, treating it as rescinded, and recover[ing] damages resulting from the rescission" or "affirm[ing] the contract, treating it as repudiated, and recover[ing] damages for breach . . . or fraud"].)[13] Those tort claims were Hakim-Baba's vehicle for seeking punitive damages. As Hakim-Baba acknowledged in the trial court, the contract damages potentially available to defendants on their cross-claim for breach of contract influenced his decision to settle for rescission without rescission damages or half of the prejudgment interest he claimed.

We also recognize that when Hakim-Baba sought summary adjudication of his rescission claim based on defendants' alleged failures of consideration, defendants successfully opposed the motion.[14] But the trial court had defendants' explanation for their opposition—Hitesh Desai's declaration that defendants were prepared to cancel the deal and refund Hakim-Baba's payments—despite their view of the contract's legitimacy—but that Hakim-Baba attempted to extract unreasonable contract cancelation terms.[15] And defendants distinguish between consensual rescission—which they say they

---

[13] We need not decide whether Hakim-Baba is correct that every one of his tort theories is irreconcilable with rescission.

[14] In conjunction with the summary adjudication motion, Hakim-Baba also sought writs of attachment under the rescission claims. Earlier in the litigation, Hakim-Baba had unsuccessfully sought writs of attachment under one of his tort claims.

[15] Hitesh Desai described as "extortionist" Hakim-Baba's claim for seven percent interest and the cost of borrowing as rescission damages, among other forms of relief.

16

wanted all along and achieved without an adjudication or admission of fault—and the rescission for cause Hakim-Baba sought through litigation—which they contend Hakim-Baba was not entitled to and "could result in unjust, harmful findings." Hakim-Baba's allegations having implicated defendants' business practices and the potential for claims for damages defendants opposed, we do not view defendants' resistance in litigation to Hakim-Baba's rescission claims as foreclosing the trial court's broader assessment of the parties' litigation objectives. Through the settlement, Hakim-Baba recovered only half the interest he sought and no other damages.

**D.**     *Whether the Trial Court Misapplied Legal Standards*

Hakim-Baba contends that the trial court misapplied legal standards when it (1) treated defendants' cross-complaint as defensive; (2) characterized rescission as a mixed result because both parties obtained a benefit and a detriment from being returned to the status quo; and (3) stated that no damages were awarded even though prejudgment interest is a measure of damages. None of these arguments supplies an independent basis for reversal.

First, Hakim-Baba argues that a trial court may only consider a defendant's defensive objective in filing a cross-complaint when considering whether to award a *defendant* prevailing party fees. But he supplies no authority for his preferred limitation: Irrespective of which party is seeking the fee award, the trial court's ultimate charge is to evaluate which if any party prevailed, considering their litigation objectives and relative success. (See *Santisas*, *supra*, 17 Cal.4th at p. 622; *Hsu*, *supra*, 9 Cal.4th at p. 877.)

Second, Hakim-Baba asserts that the trial court was not permitted to consider the practical effects of rescission. But, notwithstanding Hakim-Baba's preferred framing, this is not a simple case where one party desired rescission and the other resisted. There is room in this record for a reasonable inference that defendants viewed rescission at least as favorably as Hakim-Baba did. On a motion for fees as the "prevailing party" on the

17

"dispute," we will not require the trial court to willfully blind itself to the result achieved as compared to the claims in play.

Third, Hakim-Baba contends that the trial court chose the wrong word when it wrote that Hakim-Baba recovered "no damages and less than the legal rate of interest," even though Hakim-Baba's claimed "damages" included " 'economic costs and expenses incurred' and 'costs of funds' and 'interest at the legal rate.' " Semantics aside, the trial court understood that Hakim-Baba failed to recover any economic costs or expenses associated with his payment of $3.9 million to defendants and only half the prejudgment interest that he sought. Choosing a different word to express that understanding in its order would not have changed the outcome of its analysis.

### III.   DISPOSITION

The December 2, 2022 order denying Hakim-Baba's request for attorney fees is affirmed.

_____

LIE, J.

WE CONCUR:

_____

GREENWOOD, P. J.

_____

WILSON, J.

*Hakim-Baba v. Desai et al.*
H050787